IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SANDRA DENISE HAYNIE                                                                      PLAINTIFF


VS.                                          Civil No. 4:15-cv-04070


CAROLYN W. COLVIN                                                                         DEFENDANT
Acting Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Plaintiff, Sandra D. Haynie, brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of The Act.

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 5.[1]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.    Background:**

Plaintiff protectively filed her disability applications on June 9, 2014. (Tr. 64, 80). In her applications, Plaintiff alleges being disabled due to left shoulder problems, high blood pressure, and headaches. (Tr. 65, 81). Plaintiff's alleged onset date was June 2, 2013. (Tr. 65, 82). Her

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ___."  The transcript pages for this case are referenced by the designation "Tr. __."

disability applications were denied initially and again upon reconsideration. (Tr. 65-79, 81-95, 97-112, 114-129).

Thereafter, Plaintiff requested an administrative hearing, and the request was granted. (Tr. 146-147, 149-151). Plaintiff's administrative video hearing was held on March 18, 2015. (Tr. 35-63). Plaintiff was represented by a non-attorney advocate, Mr. Price.[2] *Id.* Plaintiff was present and testified at the hearing, and Vocational Expert ("VE") Dale A. Thomas testified via telephone. (Tr. 33-55, 55-61). At this administrative hearing, Plaintiff was forty-six (46) years old (Tr. 37), which is defined as a "younger person" under 20 C.F.R. § 416.963(c) (SSI) and § 404.1563(c) (DIB). As for her education, Plaintiff testified she completed high school. (Tr. 37).

Following the hearing, on April 27, 2015, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (Tr. 15-27). In this decision, the ALJ found Plaintiff met the disability insured status requirements under the Social Security Act through December 31, 2018. (Tr. 17, Finding 1). He also found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 2, 2013. (Tr. 17, Finding 2). The ALJ determined that since the alleged onset date of disability, Plaintiff had the following impairments, which were severe in combination: left shoulder impingement; small joint effusion of the right knee; multiple arthralgias; and migraine headaches. (Tr. 17, Finding 3). He further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 19, Finding 4).

In the decision, the ALJ considered the entire record and determined Plaintiff had the residual functional capacity ("RFC") to perform light work, except that she cannot reach overhead with either upper extremity, but can reach in any other direction occasionally with either upper

---

[2] Mr. Price's first name was not included in the transcript.

extremity. (Tr. 19, Finding 5). The ALJ further determined Plaintiff was unable to perform any Past Relevant Work ("PRW"). (Tr. 26, Finding 6). The ALJ then considered whether Plaintiff retained the capacity to perform other work existing in significant numbers in the national economy. (Tr. 26-27). In making his determination, the ALJ relied upon the testimony of the VE as to whether jobs existed in the national economy for an individual with the Plaintiff's age, education, work experience, and RFC. *Id*. Specifically, the VE testified an individual with Plaintiff's limitations would be able to perform the requirements of counter clerk/rental, with approximately 18,000 jobs in the national economy. (Tr. 27). Therefore, the ALJ determined Plaintiff had not been under a disability from the alleged onset date of June 2, 2013, through April 27, 2015, the date of the decision. (Tr. 27, Finding 11).

Plaintiff requested review by the Appeals Council of the April 27, 2015 decision by the ALJ. (Tr. 4-5). However, the Appeals Council denied her request for review of the decision. (Tr. 1-3). Thereafter, on August 3, 2015, Plaintiff filed the present appeal with this Court, ECF No. 1, and the Parties consented to the jurisdiction of this Court. ECF No. 5. The case is now ready for decision.

2. **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *see Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. §§ 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. She determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his

or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox*, 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**3.     Discussion:**

In her appeal brief, Plaintiff argues the following:  1) the ALJ erred in failing to find Plaintiff disabled as a result of her malignant hypertension, and the finding by Plaintiff's treating physician that she is disabled as a result of her blood pressure being uncontrolled; 2) the ALJ erred in failing to find Plaintiff met listing 1.02(B) as a result of her shoulder impairments and subsequent surgeries; 3) the ALJ erred in failing to consider the combination of Plaintiff's impairments as a whole, including her mental impairments associated with her chronic pain; and 4) the ALJ's hypothetical was incomplete in that he omitted several of Plaintiff's impairments. In addition, Plaintiff alleges the case should be remanded to correct the record. ECF No. 11 at 3-18. The Court will address each of these arguments.

**A.     Severe Impairment:**

A claimant suffers from a severe impairment if that impairment is more than slight and if that impairment affects the claimant's ability to do his or her basic work activities. *See Householder v. Bowen*, 861 F.2d 191, 192 n. 1 (8th Cir. 1988). The Supreme Court has also held that a claimant does not suffer from a severe impairment where the claimant only suffers from "*slight abnormalities* that do not significantly limit any 'basic work activity.'" *Bowen v. Yuckert*, 482 U.S. 137, 155, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (O'Connor, S., concurring)

(emphasis added); *see also Brown v. Bowen*, 827 F.2d 311, 311–12 (8th Cir.1987) (adopting Justice O'Connor's language from *Bowen v. Yuckert).*

Here, the ALJ determined Plaintiff had severe impairments of left shoulder impingement, right knee small joint effusion, multiple arthralgias, and migraine headaches. (Tr. 17, Finding 3). Plaintiff argues the ALJ erred in not finding additional severe impairments of hypertension and associated headaches.[3] ECF No. 11, pgs. 3-11.

There is no question Plaintiff was consistently treated for hypertension by her primary care physician, Dr. George Garrett. However, the medical records reflect that on numerous occasions, Plaintiff was non-compliant with her blood pressure medication. (Tr. 420, 426, 430, 432, 446, 557). If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *see also* 20 C.F.R. §§ 404.1530(b), 416.930(b). "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." *Id.; see also* 20 C.F.R. §§ 404.1530(b), 416.930(b). On various occasions, when Plaintiff was present at Dr. Garrett's office, her blood pressure was dangerously elevated; however, once Dr. Garrett administered medication, her blood pressure would go down. (Tr. 338, 442, 444, 446, 448, 477). Dr. Garrett referred Plaintiff to a cardiologist, Dr. Paulo Ribeiro, for an evaluation of her hypertension. (Tr. 322, 325). Dr. Ribeiro recommended Plaintiff add Amlodipine Besylate to her medications for her hypertension and ordered a thoracic echocardiogram. The echocardiogram showed mild concentric left ventricular hypertrophy; mild tricuspid regurgitation; no left atrial thrombus seen; aortic valve appears to be native; IVC unremarkable; no evidence of ischemic, primary valvular, hypertrophic,

---

[3] The ALJ did, in fact, find that Plaintiff's migraine headaches were a severe impairment; thus, the Court will only address the portion of Plaintiff's argument related to her hypertension. (Tr. 17, Finding 3).

or pulmonary heart disease. (Tr. 331). Further, Dr. Ribeiro's records do not indicate that he placed any restrictions on Plaintiff, based on his evaluation. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).

While Dr. Garrett opined that Plaintiff was disabled as a result of her uncontrolled hypertension (as well as her bilateral shoulder impairments), the medical records show that Plaintiff's blood pressure had greatly improved on some occasions. (Tr. 416, 418, 424, 479, 559). While Plaintiff testified she experienced some side effects of her medication, such as dizziness, sleepiness, and hair loss, medical records show Plaintiff repeatedly denied symptoms of visual disturbances, chest pain, shortness of breath, paroxysmal nocturnal dyspnea, orthopnea, or edema, (Tr. 412, 416, 418, 420, 426, 428, 430, 432, 434, 436, 444, 448, 454, 483, 495, 559) and complained of symptoms of shortness of breath, double vision, weakness, and thirst, in a clinical setting, on only one occasion (Tr. 375). Finally, there is no evidence of any organ damage due to her blood pressure problems.

The Court would also note that while Plaintiff alleged an inability to seek treatment and pay for medications due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds.[4] *See Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). The record further revealed that Plaintiff was a smoker or user of smokeless tobacco during a portion of the relevant time period. (Tr. 340, 368, 375, 444).

---

[4] While Dr. Garrett's notes indicate Plaintiff was unable to obtain an appointment at a nephrologist's office due to an outstanding bill Plaintiff had there, the record shows no limitations caused by a kidney impairment.

7

The Court finds that substantial evidence supports the ALJ's determination Plaintiff had severe impairments of left shoulder impingement, right knee small joint effusion, multiple arthralgias, and migraine headaches.

**B.     Listings:**

Although the ALJ found Plaintiff suffered from the severe impairment of left shoulder impingement, small joint effusion of the right knee, multiple arthralgias, and migraine headaches, there was no substantial evidence in the record showing Plaintiff's condition was severe enough to meet or equal that of a listed impairment as set forth in the Listing of Impairments. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. Plaintiff has the burden of establishing that her impairment(s) meet or equal an impairment set out in the Listing of Impairments. *See Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990). Plaintiff has not met this burden.

Plaintiff argues she meets Listing 1.02(B) for major dysfunction of a joint as a result of her bilateral shoulder impingement and her status post left shoulder arthroscopy and subacromial decompression and an arthroscopic excision of the left distal clavicle at the acromioclavicular joint. ECF No. 11, pgs. 11-15. Listing 1.02(B) requires evidence of a major dysfunction of a joint as well as evidence of involvement of one major peripheral joint in each upper extremity (i.e. shoulder, elbow, or wrist-hand), resulting in an inability to perform fine and gross movements effectively. *See* 20 C.F.R. pt. 404, subpt. P, app 1, § 1.02(B). An "[i]nability to perform fine and gross movements" is defined as "an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id*. at § 1.00(B)(2)(c). "To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living." *Id*.  "Examples of an inability to

8

perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene . . ." *Id*.

In this matter, Plaintiff has failed to establish she is unable to perform fine and gross movements effectively. Plaintiff's complaints of pain in her left shoulder began in June of 2013. (Tr. 440). Plaintiff also complained of right shoulder pain; however, she was more symptomatic on her left side. (Tr. 369). On October 2, 2013, Plaintiff underwent a left shoulder arthroscopy with subacromial decompression and arthroscopic excision of the left distal clavicle at the acromioclavicular joint. (Tr. 542). While Plaintiff's rehabilitation potential was "good," she failed to continue with her physical therapy sessions for her left shoulder. (Tr. 412, 414, 418, 539). Nevertheless, Dr. Garrett's clinic notes show that in August of 2014, Plaintiff's left shoulder was slowly improving and that in October of 2015, she could raise both arms "all the way up," but could not reach behind her back with her left arm. (Tr. 495, 559).

As for Plaintiff's right shoulder, her July 2014 x-rays were normal. (Tr. 488). Because her complaints of pain in her right shoulder continued, a MRI was performed on March 31, 2015, showing no significant cuff pathology and no cuff tear, but mild active osteoarthritis of her AC joint with downward sloping of the acromion and associated bursitis in the subacromial/subdeltoid bursal region. (Tr. 572). Dr. Kevin McLeod at Baptist Health Surgical and Orthopedic Clinic noted Plaintiff's MRI was "good for no major pathology," and recommended a trigger point injection. (Tr. 565-566). Plaintiff received the injection in her right shoulder on April 2, 2015. (Tr. 565-566).

Further, in her January 27, 2014 Function Report, Plaintiff reported she had no problem with personal care, preparing simple meals, doing laundry and cleaning. (Tr. 235-236). She also stated she attends church regularly, drives on occasion and shops in stores for food. (Tr. 237-238).

Thus, the court finds substantial evidence supports the ALJ's determination that Plaintiff did not have an impairment or combination of impairments equal to one listed in 20 C.F.R. pt. 404, subpt. P, app. 1.

### C. Combination of Impairments:

Plaintiff argues the ALJ erred by failing to consider all of her impairments in combination, including any mental impairment. ECF No. 11, pgs. 15-16. However, under the facts in the present case and after a thorough review of the ALJ's opinion and the record in this case, this Court finds the ALJ properly considered Plaintiff's impairments in combination.

The Social Security Act requires the ALJ to consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *See* 20 C.F.R. §§ 404.1523, 416.923. In the present action, in reviewing these claimed impairments, the ALJ stated Plaintiff "does not have an impairment or *combination* of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 19, Finding 4) (emphasis added). The ALJ also found, "after careful consideration of the entire record," the Plaintiff had the RFC to perform light work, except she cannot reach overhead with either upper extremity, but can reach in any other direction occasionally with either upper extremity. (Tr. 19, Finding 5). The ALJ went on to state Plaintiff's RFC would not preclude her from performing other work that exists in significant numbers in the national economy. (Tr. 26, Finding 10).

These statements are sufficient under Eighth Circuit precedent to establish that the ALJ properly considered the combined effect of a claimant's impairments. *See Hajek v. Shalala,* 30 F.3d 89, 92 (8th Cir.1994) (holding that statements such as "the evidence *as a whole* does not show that the claimant's *symptoms* ... preclude his past work as a janitor" and "[t]he '*impairments* do

10

not prevent him from performing janitorial work ..." sufficiently establish that the ALJ properly considered the combined effects of the plaintiff's impairments).

Thus, pursuant to the Eighth Circuit's holding in *Hajek*, the Court finds the ALJ properly considered Plaintiff's impairments in combination. Plaintiff has alleged she suffers from several impairments.[5] However, this Court is not required to find a claimant is disabled simply because he or she has alleged a list of medical problems. The ALJ's opinion sufficiently indicates the ALJ properly considered the combined effect of Plaintiff's impairments, and the ALJ properly considered the severity of the combination of Plaintiff's impairments. *See Hajek*, 30 F.3d at 92.

**D.     RFC Determination:**

RFC is the most a person can do despite that person's limitations. *See* 20 C.F.R. §§ 404.1545, 416.945. It is assessed using all relevant evidence in the record. *Id.* This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *See Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. *See* 20 C.F.R. § 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *See Lewis v. Barnhart*,

---

[5] Plaintiff does not initially allege she suffers from any mental impairment. The Court notes that while Plaintiff testified at the hearing that she experienced symptoms of depression since she lost her job and her health insurance, there is no evidence in the record that Plaintiff received any mental health treatment, other than medication from Dr. Garrett, her primary care physician.

353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." *Id.*

In deciding whether a claimant is disabled, the ALJ considers medical opinions along with "the rest of the relevant evidence" in the record. 20 C.F.R. §§ 404.1527(b), 416.927(b). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007), *citing Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted).

The SSA regulations set forth how the ALJ weighs medical opinions. The regulations provide that "unless [the ALJ] give[s] a treating source's opinion controlling weight ... [the ALJ] consider[s] all of the following factors in deciding the weight [to] give to any medical opinion": (1) examining relationship; (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and, (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. §§ 404.1527(c), 416.927(c). The regulations provide that if the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in [the applicant's] record,* [the ALJ] will give it controlling weight." *Id.* at §§ 404.1527(c)(2), 416.927(c)(2) (emphasis added).

In the present matter, the ALJ found Plaintiff to be able to perform light work except she cannot reach overhead with either extremity, but can reach in any other direction occasionally with either upper extremity. In making this RFC determination, the ALJ considered Plaintiff's

12

subjective complaints, the medical records of her treating physicians, and the evaluations of the non-examining medical providers.

Specifically, the ALJ considered the opinion of Dr. Garrett, Plaintiff's primary care physician, who opined that Plaintiff was disabled due to her hypertension and her shoulder pain. Moreover, on multiple occasions, Dr. Garrett's notes reflect Plaintiff was not compliant with her blood pressure medication, but on occasions when she was compliant, her blood pressure had greatly improved. (Tr. 416, 418, 424, 479, 559). While Plaintiff testified she experienced some side effects of her medication, she only complained of symptoms of shortness of breath, double vision, weakness, and thirst, in a clinical setting, on one occasion (Tr. 375), and otherwise repeatedly denied symptoms of visual disturbances, chest pain, shortness of breath, paroxysmal nocturnal dyspnea, orthopnea, or edema. (Tr. 412, 416, 418, 420, 426, 428, 430, 432, 434, 436, 444, 448, 454, 483, 495, 559). There was also no evidence of any organ damage due to her blood pressure problems. The ALJ gave Dr. Garrett's opinion little weight, noting Plaintiff's failure to follow the prescribed course of treatment for her hypertension.

The ALJ also gave Dr. Garrett's opinion little weight because Dr. Garrett's notes on his examinations of her shoulders were conclusory and were not detailed or specific. (Tr. 25-26). Moreover, Dr. Garrett's notes reveal that on August 5, 2014, Plaintiff's left shoulder was better following surgery, despite Plaintiff's failure to complete the recommended course of physical therapy. Dr. Garrett's notes reveal that on October 14, 2014, Plaintiff was able to "raise both arms all the way up" but with greater range of motion with the right arm than the left. (Tr. 559).

The ALJ gave great weight to the opinions of the following non-examining state agency doctors. On July 28, 2014, Dr. Jay Rankin performed a Psychiatric Review Technique. (Tr. 73, 89). Dr. Rankin considered the following: Plaintiff's prescription medications for anxiety; no

13

history of professional mental health treatment; and no documentation of a referral for mental health treatment in her records. (Tr. 73). As a result, Dr. Rankin opined there was no medical opinion evidence to support a severe mental impairment. (Tr. 73). A second Psychiatric Review Technique was performed by Dr. Kay Cogbill on September 29, 2014. (Tr. 106). Dr. Cogbill's opinion mirrored that of Dr. Rankin. (Tr. 106). On August 2, 2014, Dr. James Wellons opined that based on the medical records, Plaintiff was capable of performing light work "with occasional limits to OH reaching with left shoulder." (Tr. 76, 92). On September 24, 2014, Dr. Rosey Seguin affirmed Dr. Wellons' RFC assessment. (Tr. 126). These opinions as to Plaintiff's physical RFC are reflected in the ALJ's RFC determination.

Based on the record as a whole, the Court finds substantial evidence to support the weight the ALJ gave to the opinions of the various physicians and to his RFC determination.

### E.  Hypothetical Question to the Vocational Expert:

Plaintiff alleges the ALJ erred by not submitting interrogatories to the VE after he reviewed the additional records from Dr. Kevin McLeod that were submitted by Plaintiff after the hearing; thus, the vocational evidence was incomplete. ECF No. 11, pgs. 16-17.  This argument is without merit.

Plaintiff saw Dr. McLeod for right shoulder pain on March 17, 2015, and Dr. McLeod ordered a MRI.  (Tr. 568-570, 571-572).  MRI results showed some mild active osteoarthritis of the AC joint with moderate overgrowth fibrous joint capsule; downward sloping of the acromion; and bursitis in the subacromial/subdeltoid bursal region.  (Tr. 571). At Plaintiff's follow up with Dr. McLeod, clinic notes reflect the MRI was "good for no major pathology."  (Tr. 565). As a

result, Dr. McLeod recommended a trigger point injection, which Plaintiff received at her follow up visit on April 2, 2015. (Tr. 565-566).

The first hypothetical submitted to the VE incorporated the limitation of no overhead reaching with both upper extremities. (Tr. 19, Finding 5). The reaching limitations of both upper extremities were included in the ALJ's RFC determination. (Tr. 19, Finding 5). Therefore, after thoroughly reviewing the hearing transcript, along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that, during the relevant time period, Plaintiff's impairments did not preclude her from performing the job responsibilities of counter clerk/rental, with 18,000 jobs in the national economy. *See Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**F.     Plaintiff's Request for Remand to Correct the Record:**

Plaintiff alleges she submitted additional evidence to the Appeals Council for consideration and that evidence was not made a part of the record. To the extent this argument is interpreted as a motion for remand, the medical evidence attached to Plaintiff's brief is not new or material. *See Bergmann v. Apfel,* 207 F.3d 1065, 1069 (8th Cir.2000) ("To be 'new,' evidence must be more than merely cumulative of other evidence in the record," and to be "material," the evidence must be relevant to claimant's condition for the time period for which benefits were denied). Specifically, the evidence consists of Dr. Garrett's Medical Opinion Regarding Plaintiff's Ability to do Work-Related Activities (physical), dated June 24, 2015, and medical records from SW AR

15

Counseling and Mental Health Center, Inc., from May 7, 2015 through June 5, 2015, all generated after the ALJ's decision was entered on April 24, 2015.

**4.     Conclusion:**

Accordingly, the undersigned finds the ALJ's decision, denying benefits to the Plaintiff, is supported by substantial evidence and should be affirmed.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 59.

**ENTERED this 29th day of April 2016.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE